**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Reginald Tweed #16139 | ) | |
| Jonathan Moses #16865 | ) | |
| | ) | |
| Plaintiffs, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Timothy Schuetzle, Robert Coad | ) | |
| Elaine Little, Patrick Branson, Steve Foster, | ) | |
| Steve Heidt, Barb Gross, Parole Board, | ) | |
| Classification Committee, Multi- | ) | |
| Disciplinary Committee, | ) | Case No. 1:06-cv-032 |
| | ) | |
| Defendants. | ) | |

The plaintiffs, both inmates at the North Dakota State Penitentiary ("NDSP"), filed a pro se complaint with the court pursuant to 42 U.S.C. § 1983. On April 18, 2006, the undersigned granted the plaintiffs leave to proceed in forma pauperis under 28 U.S.C. § 1915(b). Thereafter, the undersigned conducted an initial review of the complaint as mandated by 28 U.S.C. §1915A. Construing the plaintiffs' pleadings liberally, the undersigned concluded that, while they had come close to stating a claim, their complaint did not allege sufficient facts on which a recognized legal claim could be based. Consequently, in an order dated April 28, 2006, the undersigned directed the plaintiffs to submit a proposed amended complaint. The parties have since submitted a proposed amended complaint which is now before the court for an initial review as mandated by 28 U.S.C. §1915A.

## I.    BACKGROUND

Tweed and Moses were charged in an incident report with helping another inmate, Michael Neugebauer, obtain a bolt cutter for use in an escape attempt in June 2004. Following a hearing before the disciplinary committee, Tweed, Moses, and Neugebauer were sanctioned, that is, they were stripped of all the good time credit they had accumulated while incarcerated, placed in administrative segregation for a period of time, and referred to the Burleigh County States Attorney for possible prosecution.[1]

Tweed and Moses petitioned the Burleigh County district court for habeas corpus relief, claiming they had been deprived of their right to due process throughout the course of their disciplinary proceedings to the extent that they were not allowed to review the evidence against them. They also complained that individuals presiding over their disciplinary proceedings were involved in the underlying investigation of the alleged escape attempt.

The district court concluded that the disciplinary proceedings failed to satisfy the due process requirements established in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).[2] Consequently, on March

---

[1] The Burleigh County States Attorney ultimately opted not to pursue criminal charges against Tweed and Moses in connection with the alleged escape attempt.

[2] The district court was rather blunt in assessment of the manner in which the disciplinary hearings had been conducted.
> The scant record and the apparent brevity of the "evidence" at the hearing conveys the impression that without statements by the petitioners which were being elicited by the committee, the evidence is limited to the confidential reports which did not make their way into the hearing record in any fashion. The involvement of Committee Chairman Robert Coad and Committee Member Foster actually participating in the investigation outside of the hearing process appears evident from the evidentiary record in this case and appears to violate the policies governing disciplinary proceedings.
> This court concludes there are deficiencies in the manner in which the petitioners were confronted with the evidence against them and the manner in which they were able to present any defense to the charges. The "hearing" does not appear to have been a hearing, but rather a procedure of stating foregone conclusions based on evidence which by its nature prison officials determined was improper to discuss or expose in the hearing context.
> The <u>Hensley</u> case, supra, also contemplates a hearing "record" which goes beyond what exists in this case. The Court stated at 278, "The disciplinary committee's obligation to make a reviewable record of informant reliability and informant evidence in support of the charge is a more

30, 2005, the district court granted Tweed's and Moses' petitions and ordered the reinstatement of good time credit that the two had accumulated prior to June 15, 2004.

Flush from their success in state court, the plaintiffs initiated the above-entitled action in this court. They allege in their amended complaint violations of their Fourteenth Amendment right to due process, their First Amendment right of freedom to associate with others, and their Eighth Amendment right to be free from cruel and unusual punishment. Specifically, they allege:

- Defendant Coad violated the plaintiffs' right to due process in that he allowed an individual who participated in the underlying investigation to co-chair the disciplinary hearing, did not present any evidence at the disciplinary hearing, omitted the plaintiffs' professions of innocence, and was deliberately indifferent to the plaintiffs' rights.

- Defendant Foster violated the plaintiffs' right to due process in that he co-chaired the disciplinary hearing after participating in the underlying investigation and was deliberately indifferent to the plaintiffs' rights.

- Defendant Schuetzle violated the plaintiffs' right to due process in that he failed to act when the plaintiffs brought the due process violations to his attention, refused to expunge the plaintiffs' disciplinary records, and was otherwise deliberately indifferent to the

---

complex issue. Wolff, supra, mandated a posture of "reasonable accommodation between the interests of the inmates and needs of the institution." (418 U.S. 572) The public record provided to the plaintiffs in this case contains only conclusory assertions of informant reliability, and then only the investigating officers, not the committees, and the most skeletal of descriptions of the offenses charged. In the District Court's view, "the committee provided no evidence in the record to support its decision." However one characterizes the quantum of evidence in the committee's findings, the scant record made in this case plainly disserves the interest of prisoners in receiving a fair hearing, because the sketchiness of the charges makes mounting a defense a difficult and haphazzard business and because meaningful judicial review of such a record will generally be impossible."

See Plaintiffs' Amended Complaint, at Exhibit A (Moses and Tweed v. Schuetzle, Case Nos. 04-C-1892 and 04-C-1893 (Burleigh County District Court, March 30, 2005) (Riskedahl, J.)).

plaintiffs' rights. He also violated their first and eighth amendment rights by virtue of the fact that they unnecessarily spent two-hundred forty-three days in administrative segregation.

- Defendant Little violated the plaintiffs' right to due process in that she failed to failed to act when the plaintiffs brought the due process violations to her attention, failed to investigate any of the administrative remedies presented to her, and was otherwise deliberately indifferent to the plaintiffs' rights. She also violated their First and Eighth Amendment rights by virtue of the fact that they unnecessarily spent 243 days in administrative segregation.

- Defendant Bertsch violated the plaintiffs' right to due process in that she failed to take corrective action even after the plaintiffs' habeas petition had been granted.

- Defendant Branson violated the plaintiffs' right to due process by virtue of her participation in the investigation of the escape plan and subsequent denial of a grievance filed by the plaintiffs.

- Defendants Gross and Heit violated the plaintiffs' right to due process by failing to take corrective action once the district court granted their petition for habeas corpus relief, denying grievances filed by the plaintiffs, and continuing to enforce the adjustment committee's punishment.

- The Parole Board, Classification Committee, and Multi-Disciplinary Committee have and continue to violate the plaintiffs' right to due process in that they classify the plaintiffs as escape risks despite the fact that the disciplinary proceedings were deemed invalid by the state district court. In February 2005, the Parole Board denied Moses

> parole due in part to his past institutional behavior. Noting that the Parole Board made no mention of institutional behavior in its previous meetings with Moses, the plaintiffs speculate that the denial of Moses' probation was predicated at least in part on the disciplinary proceedings later deemed deficient by the district court. In addition, they assert that the Classification and Multi-Disciplinary Committees continue to punish them for inaccurate information contained in their disciplinary files.

They seek recompense in the form of lost wages and restoration of their privileges for what they characterize as an illegal disciplinary action. They also demand that the results of the disciplinary hearing be expunged from their records and that penitentiary personnel, committee members, and the parole board be estopped from considering this disciplinary action when making any future decisions about housing, employment, classification, or parole.

## II.   DISCUSSION

### A.   Standard Governing Initial Review

When prisoners proceeding *in forma pauperis* seek to sue a governmental entity, officer, or employee, the court is required under 28 U.S.C. § 1915A to conduct a preliminary screening of plaintiffs' complaint to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. In conducting the review, the court must keep in mind the admonition of the Eighth Circuit that *pro se* prisoner complaints are to be liberally construed and that the court is obligated to determine whether the complaint provides relief "on any possible theory." Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir. 1988). The court may not dismiss the complaint unless it "appears beyond

doubt that plaintiff can prove no set of facts that would demonstrate an entitlement to relief." Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999).

In this case, plaintiffs allege claims under 42 U.S.C. § 1983. To state a claim pursuant to § 1983, the plaintiffs must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

**B.     Analysis**

The United States Supreme Court, in Heck v. Humphrey, held that before an inmate can recover damages under § 1983 for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, he "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a write of habeas corpus, 28 U.S.C. § 2254." 512 U.S. 477, 486-87. It added:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed proceed, in the absence of some other bar to the suit.

Id. at 487.

Here, the plaintiffs' claims relate to disciplinary proceedings that were declared invalid by the State district court's grant of a writ of habeas corpus. As the validity of the disciplinary

proceedings is no longer in issue, they would not at first blush be precluded from pursuing a § 1983 claim for damages in this court.

It is well-established, however, that a suit under § 1983 against state employees acting in their official capacities is a suit against the state and that the state has immunity under the Eleventh Amendment for any claims of damages. E.g., Quern v. Jordan, 440 U.S. 332 (1979); Edelman v. Jordan, 415 U.S. 651 (1974); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999). In this case, all of the named defendants are employed by the North Dakota State Penitentiary, which makes them state employees for the purposes this action. Thus, as a preliminary matter, it would appear that the plaintiffs are precluded from pursuing a claim for damages against the defendants in their official capacities. The undersigned will next address the substance of the plaintiffs' claims.

**1. Due Process**

**a.    Disciplinary hearings**

An inmate has a due process right to an impartial tribunal presiding over his disciplinary hearings. See White v. Indiana Parole Bd., 266 F.3d 759, 767 (7th Cir. 2001 (citing Wolff v. McDonnell, 418 U.S. at 570-71); see also Merrit v. De Los Santos, 721 F.2d 598, 601 (7th Cir. 1983). If an officer is substantially involved in the investigation of the charges against an inmate, due process forbids that officer from serving on committee sitting in judgment. See Merrit v. De Los Santos, 721 F.2d 598, 601 (7th Cir. 1983). Tangential involvement in the investigation, however, does not disqualify an officer from sitting on the committee. See id.

Further, in the context of disciplinary hearings involving the deprivation of good-time credits, governing case law, beginning with the seminal case of Wolff v. McDonnell, strikes the

7

balance between an inmate's due process rights and the institutional needs and objectives by requiring that an inmate be provided (1) "advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his [or her] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002); see also Hrbek v. Nix, 12 F.3d 777, 780 (8th Cir.1993) (citing Wolff, 418 U.S. at 563-67).

With respect to their disciplinary hearing, plaintiffs claim that the defendants failed to comply with the Wolff requirements. Further, they claim they were not afforded a hearing before an impartial tribunal by virtue of the fact that the disciplinary committee's co-chair had participated in the underlying investigation. Finally, they assert that grievances they filed in the wake of their disciplinary hearings wherein they ostensibly challenged the punishment imposed were largely ignored. Given the nexus between these grievances and the underlying disciplinary proceedings which the state court declared invalid, the undersigned finds that the plaintiffs' amended complaint sets forth cognizable due process claims regarding the disciplinary committee's procedures as well as its composition. The undersigned cannot say the same with respect to the plaintiffs' due process claims as they relate to the parole hearings, however.

    **b.**    **Parole hearings**

The plaintiffs claim that the parole board violated Moses' due process rights. A state has no duty to establish a parole system, and a prisoner has no constitutional right to release before the expiration of his sentence. See Greenholz v. Inmates of Nebraska Penal and Correction Complex, 442 U.S. 1, 7 (1979). Nevertheless, "state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Board of Pardons v. Allen, 483 U.S. 369, 371 (1987). For example, a state statute containing language mandating release under certain circumstances may create an expectancy of release, which is a liberty interest entitled to such protection. See id. at 377-78 (explaining that a parole board's regulations are relevant to determine whether a parole scheme gives rise to a constitutionally protected liberty interest).

The parole board made it determination regarding Moses's eligibility for parole in February 2005, or approximately one month before the state district court entered its order finding that the plaintiffs had not been afforded adequate process at their disciplinary hearings. Based on allegations contained in complaint, plaintiffs seek to hold the parole board liable for the conduct of the disciplinary committee. However, "[l]iability under 42 U.S.C. § 1983 requires a causal link to, and direct responsibility for the deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990). In other words, there must be a showing that each defendant either did some affirmative act, participated in the affirmative act of another, or failed to perform an act which resulted in the deprivation of the plaintiff's federally-protected rights. See id; Tilson v. Forrest City Police Dept., 28 F.3d 802, 806-809; Stevenson v. Koskey, 877 F.2d 1435 (9th Cir.1989). In this case, there is no basis for holding the parole board responsible under § 1983 based on the allegations contained in the complaint.

**2.  First Amendment claim**

The plaintiffs claim they were deprived of their first amendment right to free association inasmuch as their placement in administrative segregation following their disciplinary hearing denied them the opportunity to socialize with other inmates in the penitentiary.  They do not challenge the validity of any particular penitentiary regulation or policy per se.  Rather, their position is that their punitive segregation violated their first amendment rights because their disciplinary hearing was not accompanied by the proper prophylactic procedures mandated in Wolff v. McDonnell, 418 U.S. 539, 555 (1974).

"[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment."  Beard v. Banks, __ U.S. ___, 126 S.Ct. 2572, 2577 (2006).  "But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere."  Id. at 2577-78; see also Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ("An inmate does not retain rights inconsistent with proper incarceration.").

Freedom of association is among the rights least compatible with incarceration. See Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (opining that "some curtailment of that freedom must be expected in the prison context").  While this right is not altogether terminated by incarceration, the operational realities of prisons dictate certain restrictions on an inmate's freedom to freely associate with others. See id.; see also Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977); Austad v. South Dakota Bd. Of Pardons and Paroles, No. 23914, 2006 WL 2036166 at *11 (S.D. July 19, 2006) ("Prison regulations which impinge First Amendment rights are permissible if they are 'reasonably related' to legitimate penological interests and are not an 'exaggerated response' to those objectives.").

10

Although inmates do not have an unfettered right to free association, such rights are not necessarily extinguished in their entirety by virtue of their incarceration. In this case, plaintiffs' First Amendment claim is colored by and entangled with their due process claims, making it somewhat difficult to draw a distinction between them. While it is doubtful that the plaintiffs have a First Amendment claim, this matter would be better resolved later since the due process claims must go forward and the inclusion of the claim at this point will not affect who plaintiffs are permitted to sue.

### 3. Eighth Amendment claim

The plaintiffs next assert that their eighth amendment rights "were violated due to the cruel and unusual punishment they endured and continue to endure" and that they "unnecessarily spent 243 days in administrative segregation." In the context of their complaint, it is apparent they perceive any punishment stemming from their disciplinary hearings to be unjustified and therefore cruel and unusual. In addition, it appears that they consider the duration of the placement in administrative segregation to be excessive under the circumstances and therefore cruel and unusual.

Generally speaking, the Eighth Amendment protects prisoners from cruel and unusual living conditions. See Rhodes v. Chapman, 452 U.S. 337 (1981). In this case, plaintiffs are claiming that their placement in a segregation unit without cause and for an excessive period of time can be broadly construed to assert a separate Eighth Amendment living conditions claim. Again, while it is doubtful plaintiffs have an Eighth Amendment claim under these circumstances, this is better resolved later since the due process claims must go forward and the inclusion of the claim at this point will not affect who plaintiffs are permitted to sue.

### 4. Individual defendants

The only claims against the parole board are plaintiffs' due process claims. For reasons already discussed, plaintiffs have failed to state a claim of a constitutional violation against the parole board that would be cognizable under § 1983. Hence, plaintiffs should not be permitted to proceed against the parole board.

While the court has doubts about the claims against several of the other named defendants, these are better resolved later. Also, the court notes that several of the defendants are being sued in their official capacities, as well as individual capacities, and it may be that they are proper party defendants for any injunctive relief that may be owed.

### III. CONCLUSION

Having concluded an initial review of the plaintiffs' complaint, it is hereby **RECOMMENDED** that:

1. Plaintiffs' claims against the parole board be dismissed without prejudice.

2. Plaintiffs' claim for damages against the defendants in their official capacities be dismissed.

3. Plaintiffs be allowed to proceed with the remainder of their claims against the remaining defendants.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to Local Rule 72.1(3)(4), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken.

Dated this 28th day of August, 2006.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge