**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Reginald Tweed #16139 | ) | |
| Jonathan Moses #16865 | ) | |
| | ) | |
| Plaintiffs, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Timothy Schuetzle, Robert Coad | ) | |
| Elaine Little, Patrick Branson, Steve Foster, | ) | |
| Steve Heidt, Barb Gross, | ) | |
| Classification Committee, Multi- | ) | |
| Disciplinary Committee, | ) | Case No. 1:06-cv-032 |
| | ) | |
| Defendants. | ) | |

Before the court is Defendants' Motion for Summary Judgment. Chief Judge Hovland has referred the motion to the undersigned for preliminary consideration. For the reasons set forth below, the undersigned recommends that the motion be denied.

I.     **BACKGROUND**

Tweed and Moses, both inmates at the North Dakota State Penitentiary ("NDSP"), were charged in incident reports with assisting another inmate in an apparent escape attempt. See Brief in Support of Defendants Motion for Summary Judgment, at Exs. 2 and 12. The adjustment committee (also known as the disciplinary committee) convened a disciplinary hearing on June 21, 2004, after which it recommended that Tweed and Moses be stripped of their good-time credits and placed in administrative segregation for a period of ninety days. See id. Warden Timothy Schuetzle approved its recommendation. See id.

1

Tweed filed an appeal from the disciplinary committee action to Warden Schuetzle on June 28, 2004.  See id. at Ex. 7.  Therein, he challenged the disciplinary committee's reliance on undisclosed, confidential evidence.  He also complained about the lack of disclosure of information about the charge, complaining it was not sufficient to allow him to mount a defense.  See id.  Finding that Tweed had been afforded appropriate process and that the evidence obtained from confidential informants was credible and reliable, Warden Schuetzle denied Tweed's appeal in a memorandum dated June 30, 2004. See id. at Exs. 7 and 8.  In so ruling, Schuetzle went beyond the record created by the disciplinary committee and consulted with the disciplinary committee chairman about the confidential-informant information.  Also, there was no indication that the disciplinary committee made a contemporaneous finding as to the reliability of the confidential informant.

Dissatisfied, Tweed filed a further appeal with the then Department of Corrections and Rehabilitation (DOCR) Director Elaine Little on July 1, 2004.  See id. at Ex. 9.  The next day he filed a supplement to his appeal that specifically added additional complaints regarding Warden Shuetzle's handling of the appeal.  See id. at Ex.10.  Finding no merit to Tweed's assertions, Director Little denied his appeal in a letter dated July 19, 2004.  See id. at Ex. 11.

Meanwhile, on July 9, 2004, Tweed filed "Step 1" grievances against case managers Foster and Coad for their roles in the disciplinary hearing and underlying investigation.  See Exs. 17, 18, and 21.  All of the grievances were denied on July 12, 2004, prompting Tweed to file "Step 2" grievances against Foster and Coad.  See id. at Exs. 17-22.

The Warden denied Tweed's "Step 2" grievance against Foster on July 14, 2004, with the admonition that Tweed should seek redress of his concerns through the appeals as opposed to the

grievance process.  See id. at Ex. 19.  He denied Tweed's "Step 2" grievance against Coad on July 19, 2004.  See id. at Ex. 22

On July 21, 2004, Tweed filed with Director Little appeals from the denials of his "Step 2" grievances.  See id. at Exs. 20 and 23.  Director Little subsequently advised Tweed in a letter dated September 13, 2004, that she would not act on these appeals as he could not use the grievance process to dispute a disciplinary matter.  See id. at Ex. 24.

After completion of the appeals from the disciplinary hearing and his additional attempts to grieve his complaints, Tweed petitioned the Burleigh County district court for habeas corpus relief, seeking restoration of his good-time credits.  Moses joined in this effort even though he had not filed administrative appeals from his disciplinary conviction or attempted to use the grievance process to grieve his complaints.  See Plaintiffs' "Motion to Have Ex. A Reviewed Along with Amended Complaint" and Ex. A (Moses and Tweed v. Schuetzle, Case Nos. 04-C-1892 and 04-C-1893 (Burleigh County District Court, March 30, 2005) (Riskedahl, J.)).

On March 30, 2005, the state district court granted plaintiffs' habeas petitions and ordered Warden Shuetzle to re-instate their good-time credits.  The district court concluded that the administrative convictions for escape had been obtained in violation of plaintiffs' constitutional rights.

Emboldened by their state court success, Tweed and Moses proceeded to file additional grievances relating to the sanctions imposed following their disciplinary proceedings.  See Plaintiffs Response to Answer and Motion for Summary Judgment, at Exs. 1-3.  On April 4, 2005, Moses filed a "Step 1" grievance requesting:  expungement of his disciplinary record; release from administrative segregation; credit for lost good time; reinstatement to "C.I.T.," the music program,

and his employment in the penitentiary's commissary; credit for "MGT" he would have earned since June 2004; placement on the "single cell" list; reimbursement of legal fees incurred since June 2004; and a reclassification hearing.  See id. at Ex. 1.  Tweed filed two "Step 1"grievances on April 4, 2005, wherein he too requested reinstatement of his privileges and previous employment, expungement of his disciplinary record, and an adjustment of his classification.  See id. at Exs. 2-3.

Case manager Steven Heit denied Tweed's "Step 1" grievances on April 4, 2005, stating that neither disciplinary proceedings nor the implementation of disciplinary decisions by penitentiary employees were grievable. See id.  Case manager Barb Gross denied Moses' "Step 1" grievance on April 8, 2005, on the grounds that the only issue addressed in the state district court's order was the issue of good time.  See id.

Tweed and Moses proceeded to file separate "Step 2" grievances with Warden Schuetzle on April 9, 2005.  See id.  at Exs. 4 and 5.  Therein they asserted an entitlement to receipt of lost wages as well as restoration of good time, privileges, and employment on account of the state district court's order granting them habeas corpus relief.  See id. Warden Schuetzle denied both grievances on April 12, 2005.  See id.

There is a dispute regarding whether Tweed and Moses appealed the denial of the "Step 2" grievances to the DOCR Director.  The defendants claim there is no record of the appeal.  Tweed and Moses have both filed affidavits stating that they further appealed the denial of their "Step 2" grievances to the DOCR Director on April 15, 2002, but that they never received a response. They have filed documents, which they claim are copies of the appeals that they forwarded to the DOCR Director.  They also state it was about this time that Leann Bertsch replaced Elaine Little as Director of the DOCR, speculating that their appeals got lost in the shuffle.

4

Allegedly, because they had received no response to their appeals, Tweed and Moses wrote to Director Bertsch on or about August 1, 2005, requesting "fresh opinions" regarding their complaints that the escape convictions were still being used against them, despite the conclusion of the state district court that the convictions had been obtained in violation of their constitutional rights.  See id. at Ex. 6.  Specifically, they requested reinstatement of lost privileges, expungement of any reference to the disciplinary proceedings from their respective records, and compensation for lost wages and legal fees.  See id.  In letters to Tweed and Moses dated August 4, 2005, Director Bertsch responded by stating that there was an evidentiary basis for the discipline imposed, that their good time had been reinstated as ordered by the state district court, and that the matter was now closed.  See id. at Exs. 7 and 8.  No mention was made in her response about any prior failure to properly grieve the issues presented to her or that the complaints were untimely.

Tweed and Moses initiated  this action by submitting a proposed complaint on April 19, 2006.  (Docket Nos. 1-3).  Thereafter, following the court's initial review of their proposed complaint, they filed an amended complaint. (Docket Nos. 4, 8, and 17).

On August 28, 2006, the undersigned issued a report recommending the dismissal of plaintiffs' claims against the parole board, as well as plaintiffs' official capacity claims for damages against the remaining defendants. (Docket No. 14).  The court entered an order adopting the undersigned's Report and Recommendation on September 12, 2006.  (Docket No. 16).

The remaining defendants filed a motion for summary judgment requesting that the case be dismissed in its entirety for lack of exhaustion of administrative remedies. (Docket No 28).  Pending resolution of the motion, the court stayed discovery.  Also, after the initial briefs were filed, the court ordered additional briefing to address the recent decision of the United States Supreme Court

in <u>Jones v. Bock</u>, __ U.S.__, 127 S. Ct. 910 (2007) having to do with exhaustion of prison remedies.

The supplemental briefing having been completed, the matter is ripe for consideration.


## II.   <u>STANDARD OF REVIEW</u>

The following well-established principles govern the court's consideration of the State's

motion for summary judgment:

> Summary judgment is appropriate only when the pleadings, depositions and
> affidavits submitted by the parties indicate no genuine issue of material fact and
> show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.
> 56(c). The party seeking summary judgment must first identify grounds
> demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v.</u>
> <u>Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Such a
> showing shifts to the non-movant the burden to go beyond the pleadings and present
> affirmative evidence showing that a genuine issue of material fact exists. <u>Anderson</u>
> <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202
> (1986). The non-moving party "must do more than simply show that there is some
> metaphysical doubt as to the material facts." <u>Matsushita Elec. Ind. Co.</u>, 475 U.S. 574,
> 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d (1986). The non-movant "must show there is
> sufficient evidence to support a jury verdict in [her] favor." <u>Nat'l Bank of Commerce</u>
> <u>v. Dow Chem. Co.</u>, 165 F.3d 602, 607 (8th Cir.1999). "Factual disputes that are
> irrelevant or unnecessary will not be counted," <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct.
> 2505, and a mere scintilla of evidence supporting the nonmovant's position will not
> fulfill the non-movant's burden, <u>id</u>. at 252, 106 S.Ct. 2505.

<u>Uhiren v. Bristol-Meyers Squibb Company, Inc.</u>, 346 F.3d 824, 827 (8th Cir. 2003).

The prevailing view is that summary judgment can be granted in favor of a nonmoving party

or *sua sponte* by the court so long as the losing party was on notice that the party had to come

forward with all of its evidence.   <u>E.g.</u>, <u>Boyle v. Anderson</u>, 849 F. Supp. 1307, 1309 n.1

6

(D.Minn.1994);[1] see generally C. Wright, A. Miller & M Kane Federal Practice and Procedure Civil 3d § 2720 (1998).

## III.   DISCUSSION

### A.   Introduction

The sole issue raised by the defendants' motion for summary judgment is whether one or more of plaintiffs' claims are barred on account of having failed to exhaust prison remedies. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits.  See Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (observing that "the PLRA's dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court").

The thrust of defendants' motion initially was that the entire case should be dismissed based upon a combination of failure-to-exhaust arguments that included plaintiffs' failure to name each individual defendant being sued in this action during the exhaustion of their prison remedies, as well as the inclusion of unexhausted claims.  The defendants now concede that the failure to name each

---

[1] In Boyle v. Anderson, supra, the court stated:
Summary judgment may be granted in favor of a nonmoving party. See Hyamstad v. Suhler, 727 F.Supp. 511, 520 (D.Minn.1989), aff'd, 915 F.2d 1218 (8th Cir.1990); see also Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.")
849 F. Supp. at 1309 n.1.

individual defendant and the inclusion of unexhausted claims are no longer grounds for dismissal of the entire action in light of the Supreme Court's recent decision in <u>Jones v. Bock</u>, <u>supra</u>.

In supplemental briefing, defendants argue that the decision in <u>Jones</u> means that only one claim by Tweed survives. They argue that Tweed's remaining claims, as well as all of Moses's claims, are still subject to dismissal on exhaustion grounds.

Before turning to the merits of the defendants' exhaustion defense, some discussion regarding the state district court's habeas ruling is in order.

**B.    State habeas ruling**

As already noted, the state court granted plaintiffs' habeas petitions and ordered restoration of their good-time credits after concluding that the convictions for escape had been obtained in violation of plaintiffs' constitutional rights.  The court concluded that the process leading up to the deprivation of plaintiffs' liberty interest in their accumulated good-time credits failed to comply with the minimal due process requirements imposed by the United State Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (2005) in that:

- Prison officials failed to provide the plaintiffs with sufficient information regarding the charges to enable them to mount a meaningful defense.

- The disciplinary committee failed to propound sufficient findings and otherwise make a record sufficient to allow for meaningful review.

- The disciplinary committee improperly relied upon uncorroborated, or not properly corroborated, confidential-informant information.

- •    Two of the disciplinary committee members were involved in the investigation of the underlying incident and, for this reason, were not detached and neutral decision-makers.

- •    Warden Schuetzle improperly sought out and relied upon information outside the record in deciding the administrative appeal.[2]

In fact, the state court judge found the process so perfunctory and deficient that he concluded: "The 'hearing' does not appear to have been a hearing, but rather a procedure of stating foregone conclusions . . . ."[3]

NDSP officials chose not to appeal the state court's habeas ruling.  Hence, from the point when that decision became final,  prison officials were bound by the state court's conclusion that the administrative convictions had been obtained in violation of the plaintiffs' constitutional rights. Morever, while a final decision need not be made now, the state court's conclusions regarding plaintiffs' deprivation of their constitutional rights is likely binding upon the defendants in this action - at least to the extent they are being sued in their official capacities.  See, e.g., Allen v.

----

[2]  While the state court ordered the restoration of the good-time credits premised upon its conclusion of the violation of the Wolff v. McDonnell requirements, the court observed that what occurred also violated the DOCR's own policies.  The court noted that DOCR's policies required that the disciplinary committee membership be impartial and not comprised of persons who were involved in the investigation of the charged offense.  Further, other portions of the policy required that the decision of the disciplinary committee be in writing and be based solely upon the information obtained during the hearing process.

[3]  The court also expressed concern about plaintiffs' Fifth Amendment rights against self-incrimination possibly having been violated, as well.  The court's memorandum opinion, however, makes it clear that the ultimate decision to order the restoration of the good-time credits was premised upon the failure to comply with the Wolf v. McDonnell requirements.

McCurry, 449 U.S. 90, 94 (1980); W.F.M., Inc. v. Cherry County, 279 F.3d 640, 643 (8th Cir.

2002).[4]

As a consequence of the state court's habeas ruling, plaintiffs' claims in this case can be

divided into two broad categories.  The first category are those claims that relate to the conduct of

the prison officials <u>after</u> the state court rendered its decision concluding that plaintiffs' federal

constitutional rights had been violated.  The second category are those claims that arise directly from

what occurred earlier during the disciplinary process.

### C.    Plaintiffs' claims that relate to the conduct of the prison officials after the state court habeas decision

Plaintiffs complain that prison officials have failed to expunge their convictions for escape

from the prison's records despite the conclusion of the state district court that the convictions had

been obtained in violation of their constitutional rights.  They further claim that prison officials

continue to use the convictions (including any internal conclusion of the plaintiffs' guilt) against

them for certain purposes, including housing and employment assignments, classifications, and

parole and pardon considerations.

Whether plaintiffs properly exhausted their appeals from the disciplinary convictions initially

is beside the point with respect to these claims since they are about what prison officials allegedly

continued to do <u>after</u> the state court concluded that plaintiffs' federal constitutional rights had been

violated.  Consequently, in terms of exhaustion under the PLRA, the focus for these claims must be

---

[4] The same may not be true, however, as to the damage claims being brought against the defendants in their individual capacities since none of the defendants in their individual capacities were parties to the state habeas proceeding, except for possibly Warden Schuetzle who was the only named respondent in the habeas action.  <u>See id.</u> (looking to state law to determine the applicable collateral estoppel rules); <u>Gratech Co., Ltd. v. Wold Engineering, P.C.</u>, 2007 ND 46, ¶ 14, 729 N.W.2d 326 (observing that North Dakota follows the strict rule of requiring mutuality of the parties before collateral estoppel will apply).

upon whether there were any administrative remedies that were "available" within the meaning of 42 U.S.C. § 1997e(a) after the state court's decision and whether plaintiffs properly exhausted those remedies.

After the state district court rendered its decision, Tweed and Moses both promptly filed "Step 1" and "Step 2" grievances regarding the failure to expunge, continued use of the convictions, and other issues.  Defendants contend that plaintiffs failed to properly exhaust the grievance remedies because they did not take an appeal from the denial of the "Step 2" grievances to the Director of the DOCR.  However, as already noted, both plaintiffs swear in separate affidavits that they appealed the denial of the "Step 2" grievances to the DOCR Director, but did not receive a response.  They also have submitted copies of what they claim are the appeals that they forwarded to the DOCR Director.  To the extent that the grievance process had to be followed, including the taking of an administrative appeal, there is at least a fact question regarding whether an appeal was taken.

But, it is not at all clear whether the plaintiffs had to follow the grievance process at that point because, along the way, plaintiffs received responses suggesting that use of the grievance process to address the issues they were raising was improper.  At the very least, these responses raise fact issues regarding what process was actually available and whether prison officials are estopped from claiming plaintiffs should have followed the grievance procedures after advising that the procedures were not the correct ones.  See Giano v. Goord, 380 F.3d 670, 677-679 (2nd Cir. 2004); cf. Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002) (*en banc*) (noting that there was no basis for an estoppel claim in that case).

Also, in addition to attempting to grieve these issues, plaintiffs each wrote a letter to DOCR Director Bertsch about the continued use of the administrative convictions and the lack of expungement.   Bertsch responded stating that (1) she had reviewed the entire confidential investigation file, (2) she had concluded there was sufficient evidence to support the discipline complained about, and (3) that the earlier failure to comply with the <u>Wolff v. McDonnel</u> hearing requirements was cured by the restoration of plaintiffs' good-time credits.[5]  At that point, Bertsch's

---

[5]  In other words, Bertsch appears to have concluded there is nothing wrong with the prison officials continuing to use  plaintiffs' escape convictions against them, so long as prison officials do not take away their good-time.

Whether continued  use of the administrative conviction (or any other internal conclusions of plaintiffs' guilt) amounts to a constitutional violation under the circumstances is less than clear.  For example, the fact that plaintiffs may be subject to less desirable housing assignments would normally not give rise to a constitutionally protected liberty interest.  This is because a less-desirable housing assignment (such as to a general cell block instead of an honor dorm) would not be an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," which the Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995) has established as the necessary threshold to give rise to a liberty interest that is actionable under the Due Process Clause.  Also, the court in <u>Sandin</u> rejected the claim that the record of the thirty-day disciplinary confinement in that case might some day affect the possibility of future parole as being too remote to give rise to the deprivation of a liberty interest. 515 U.S. at 487.

On the other hand, this case is different from <u>Sandin</u>.  Unlike <u>Sandin</u>, this case involves a disciplinary action that, in part, resulted in a denial of good-time credits, which gave rise to certain due process rights.  Also, there is in this case, unlike in <u>Sandin</u>, a state court decision holding that the administrative convictions were obtained in violation of the prisoners' constitutional rights. Consequently, <u>Sandin</u> did not address the propriety of using a constitutionally flawed administrative conviction to impose hardships, which may not have been actionable by themselves, but for which there has now been an adjudication of constitutional rights as a consequence of prison officials also depriving the prisoners of good-time. In other words, there may be an argument that once prison officials raise the stakes sufficiently to invoke a liberty interest that then the due process requirements apply to all the adverse consequences that may be imposed.

Further, even if the convictions (or some other internal conclusions of guilt) can continue to be used for matters that do not reach the  <u>Sandin</u> threshold,  it may not be a foregone conclusion (as the prison officials appear to assume) that the only liberty interest involved was the denial of good-time credits.  In <u>Sandin</u>, when the Court rejected the notion that the record of the thirty-day disciplinary confinement created a liberty interest because of the possible impact on parole considerations, the Supreme Court made a point of noting that the administrative charge in that case for "high misconduct" had been expunged from the prisoner's record.  515 U.S. at 487 n.10.  In so noting, the Court made clear it was addressing only the potential impact on parole created by the record of the thirty-day assignment to disciplinary segregation and not the impact created by the administrative conviction for "high misconduct."   In this case the administrative convictions are for escape, which falls into the highest category of prison offenses along with murder, taking hostages, and committing assault and battery on prison staff.

Also, while the Court in <u>Sandin</u> concluded that the thirty-day disciplinary confinement in that case did not meet the necessary threshold of creating a liberty interest that does not mean that all disciplinary confinement is exempt from scrutiny.  Rather, the disciplinary confinement must be evaluated both in terms of length and the conditions of confinement to determine whether the <u>Sandin</u> threshold has been met. E.g., <u>Smith v. Ortiz</u>, 2006 WL 620871, *2 (10th Cir. 2006) (unpublished opinion);  <u>Palmer v. Richards</u>, 364 F.3d 60, 64-67 (2nd Cir. 2004).  In this case, the initial punishment imposed appears to have been a ninety-day disciplinary confinement, but there appear to be allegations by at least one of the plaintiffs that it was much longer.

Finally, it appears that many of the problems in this case could have been avoided had prison officials done

response addressing the merits, without any mention of an earlier failure to exhaust appeals or the untimeliness of bringing these matters to her attention, may constitute a waiver of any claimed deficiencies and/or support for the conclusion that the process was substantially complied with, particularly given the uncertainty regarding what prison remedies were actually available.[6]   Cf. Johnson v. Testman, 380 F.3d 691, 697-698 (2nd Cir. 2004); Spruill v. Gillis, 372 F.3d 218, 234 (3rd Cir. 2004); but see Lewis v. Washington, 300 F.3d 829, 833-835 (9th Cir. 2002) (no excuse for substantial compliance, but possibly for estoppel).  There may be disputed issues of fact as to these points, as well.

> **D.     Plaintiffs' claims due process claims**

Plaintiffs also seek to recover damages and other relief as a consequence of the denials of due process during the disciplinary hearing and subsequent administrative appeal.  Since Tweed appealed his disciplinary conviction and Moses did not,  the exhaustion defense will be considered separately as to each with respect to the due process claims.

> **1.     Tweed**

Defendants now concede that Tweed properly exhausted his administrative remedies with respect to the claim that the disciplinary committee improperly considered confidential-informant information, but argue that he failed to properly exhaust his other arguments as to why his due

---

either one of two things.  First, prison officials could have appealed the state district court's habeas decision if they were confident that plaintiffs' constitutional rights had not been violated or that the state court had erred in not reviewing the confidential informant information *in camera*, which it may have.  Second, after deciding not to appeal,  prison officials could have conducted new disciplinary hearings conforming with the state court's objections.  But, in the absence of doing one or the other, the wisdom of not then expunging the prisoners' convictions escapes the undersigned.  Morever, it appears to do little for instilling respect for the prison's administrative process.

  [6]  In contrast, when Tweed attempted to grieve certain issues with regard to the disciplinary process prior to commencing the state habeas action, DOCR Director Little refused to hear his appeal on account of the fact that she considered it to be an improper procedure.

process rights were violated.   The prison's records relating to the administrative appeal, however, indicate that Tweed complained not only about the two confidential-informant issues (*i.e.,* the lack of sufficient disclosure to him of the confidential-informant evidence and the failure to make a contemporaneous determination of the reliability of the confidential informant), but also about the lack of overall disclosure of the particulars of the charge and the evidence that would be used against him.[7]   Further, it was after the initial hearing and during the administrative appeal, that  Warden Schuetzle responded to Tweed's complaints about the confidential-informant issues stating that he had separately conferred with Disciplinary Committee Chairman Coad about how the confidential-informant information had been used and its claimed reliability.  This appears to have been the first notice to Tweed that Warden Schuetzle had gone outside the record of the disciplinary proceeding.[8] Tweed promptly complained about this, as well as the issues that he raised initially, in his next round of appeals to the DOCR Director.

Finally, Tweed, a non-attorney, was not required to make every argument as to why the process afforded to him was deficient. "As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Johnson v. Testman, 380 F.3d at 697 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).

---

[7] Tweed's defense was that he did not do it, and the state district court in the habeas proceeding concluded, in part, that Tweed was not provided sufficient detail regarding the charges and the investigation to allow him to mount an effective alibi defense.

[8] The portion of the DOCR's rules that were provided to the court do not state specifically what the warden can consider on appeal.  However, the only reasonable construction of the DOCR's rules is that the warden is limited to the record created by the disciplinary committee given:  the requirements for the creation of such record; the fact that the rules limit his initial review of the committee's recommendations prior to appeal to what the committee provides, dismissing the matter, or ordering a new hearing; and the commonly understood legal principle that appeals are based on the record created by the decision-maker from which the appeal is taken.

In this case, Tweed put prison officials on notice that he believed there were problems with the procedures that were being followed and that his due process rights were being violated. In fact, he even cited to a number of cases discussing the <u>Wolff v. McDonnell</u> requirements. Consequently, it is clear that Tweed fulfilled his exhaustion obligations under the PLRA with respect to his claim for denial of due process and that there are no material disputed facts with respect to this issue.

### 2. Moses

Unlike Tweed, Moses did not administratively appeal his conviction for escape. Absent an applicable exception or excuse from the exhaustion requirement, the defense of failure to exhaust would appear to have merit with respect to Moses's due process claims.[9]

The Supreme Court has concluded that the exhaustion requirement imposed by § 1997e(a) is not a jurisdictional prerequisite to seeking § 1983 relief, but rather is an affirmative defense. <u>E.g.</u>, <u>Jones v. Brock</u>, 127 S.Ct. at 919. Being an affirmative defense and not an absolute jurisdictional requirement, it may still be the subject of waiver and estoppel. <u>E.g.</u>, <u>Giano v. Goord</u>, 380 F.3d at 677-679; <u>Foulk v. Charrier</u>, 262 F.3d 687, 687 (8th Cir. 2001);

Further, in rare cases, it may yet be that compliance can be excused for other reasons. For example, the Supreme Court has held that the PLRA's exhaustion requirement is comparable to that imposed by administrative law, <u>Woodford v. Ngo</u>, __ U.S. __, 126 S.Ct. 2378, 2384-88 (2006), which recognizes a number of exceptions to the exhaustion requirement, <u>id.</u> at 2393-94 (Breyer, J., concurring). So far, the Supreme Court has rejected arguments for applying particular administrative law exceptions in at least two cases. <u>Jones v. Brock</u>, 127 S.Ct. at 2386 n.2. (rejected

---

[9] As noted earlier, this is to be distinguished from Moses's claims arising as a consequence of the state court's habeas decision.

argument that do not need to exhaust constitutional issues); <u>Booth v. Churner</u>, 532 U.S. 731, 741 & n.6 (2001) (rejected futility and lack of an effective remedy as excusing exhaustion - at least in the context of the precise remedy not being available). But, arguably, the results in those cases were because of the differences between the PLRA and administrative law as applying to those exceptions. <u>See</u> <u>id.</u> Consequently, it remains an open question as to whether other exceptions may still be applied, albeit in rare and exceptional cases. <u>See</u>, <u>e.g.</u>, <u>Woodford v. Ngo</u>, 126 S.Ct. at 2393-94 (Breyer, J., concurring); <u>Booth v. Churner</u>, 532 U.S. at 741 n.6 (leaving the issue open); <u>Lyon v. Vande Krol</u>, 305 F.3d at 812 (Bright J. and McMillian, J. dissenting) (noting that <u>Booth</u> may not have foreclosed all exceptions to exhaustion); <u>cf.</u> <u>Ace Property and Cas. Ins. v. Federal Crop Ins. Corp.</u>, 440 F.3d 992, 996-1002 (8th Cir. 2006) (holding that not all statutory exhaustion requirements are equal, including the PLRA, and recognizing that there may be exceptions to statutory exhaustion requirements in some cases); <u>Gibson v. Weber</u>, 431 F.3d 339, 341 (8th Cir. 2005) (summarizing cases in which the Eighth Circuit had applied exceptions to the PLRA's requirements). And, one well-recognized exception to exhaustion in the administrative law context is "where the administrative body is shown to be biased or has otherwise predetermined the issue before it." <u>McCarthy v. Madigan</u>, 503 U.S. 140, 148 (1992); <u>see</u> <u>Lyon v. Vande Krol</u>, 305 F.3d at 812 (dissenting opinion); <u>Harwood v. Apfel</u>, 186 F.3d 1039,1043 (8th Cir. 1999).[10]

---

[10] The arguments against allowing such an exception, in addition to the fact that § 1997e(a) does not explicitly provide for it, are that it would open the door to all kinds of allegations, needlessly complicate the process, and frustrate Congress's intent. But, mere belief that there was bias, or that the outcome was predetermined, would not be sufficient for the exception to apply; some objective evidence would be necessary. <u>E.g.</u>, <u>Doyle v. City of Chino</u>, 172 Cal. Rptr. 844, 849 (Cal. App. 4th Dist. 1981). In most cases, without the process having been completed, objective evidence of predetermination or bias would likely be difficult to come by. This case, given the unique circumstances of a co-defendant who completed the process and a state-court decision arguably finding bias and predetermination, may be a rare instance in which this exception could be proved.

Also, there are PLRA decisions that have suggested that exhaustion can be excused in certain rare instances, including those falling under the rubric of "special circumstances." Giano v. Goord, 380 F.3d at 677-679; Hemphill v. New York, 380 F.3d 680, 686-691 (2nd Cir. 2004) (citing other cases); cf. Miller v. Norris, 247 F.3d 736 (8th Cir. 2001).[11]  And, in this case, the court is confronted with fairly unique circumstances as to Moses.  There is the fact that the other similarly-situated prisoner, Tweed, exhausted his disciplinary proceedings to no avail.  And, more importantly, there is also the state court's habeas decision (which prison officials chose not to appeal) holding (1) that the process followed by the disciplinary committee with respect to Moses was so flawed that the committee "hearing" was not really a hearing, but rather a meeting to announce foregone conclusions, and (2) that the appeal process that the defendants argue should have been followed was also flawed and tainted.[12]

There seems to be something anomalous about holding that Moses should have been required to exhaust administrative remedies under these particular circumstances.  It is obvious from what happened  to Tweed's administrative appeal that any similar appeal made by Moses would have

---

[11]  Section 1997e(a) requires only that prisoners exhaust "available" remedies.  While the Supreme Court held in Booth that this includes exhaustion even when the precise remedy, such as damages is not available, there may yet be an argument that a proceeding that is not only constitutionally flawed, but is also biased to the degree that the outcome was predetermined was not an "available" remedy within the contemplation of § 1997e(a) and that this constitutes a "special circumstance."

[12]  It may be argued that the state district court's habeas decision should not be used as a basis for applying an exception to the exhaustion requirement insofar as the suits against the defendants in their individual capacities are concerned.  For reasons already noted, the defendants sued in their individual capacities may be able to argue that they are not collaterally estopped by the state court's conclusions regarding the deprivations of plaintiffs' constitutional rights.  The statutory defense of exhaustion, however, is different from typical affirmative defenses in that it does not arise out of a right or benefit personal to the defendant.  In Jones, the Supreme Court concluded that the PLRA's exhaustion requirement does not mandate that all persons being sued under § 1983 must first be named or otherwise identified in the prison administrative process.  Jones v. Brock, 127 S.Ct. at 922-923.  This is because the purpose of the defense is to alert prison officials generally to a problem in the hope of reducing the amount of litigation, not to provide notice to any particular official and give that official an opportunity to participate.  Id.  Consequently, there would be no unfairness in resolving the exhaustion issue based upon the record of the prison administrative proceedings and any state-related adjudications, even though a particular § 1983 defendant did not have the opportunity to participate in those proceedings.

17

suffered the same fate.  Moreover, the result of allowing state prison officials to benefit from an argument that certain administrative processes should have been exhausted - notwithstanding the conclusion of the state district court that the processes were biased, a stacked deck, and violated due process rights - is difficult to explain and does nothing to engender respect among the prison population for the fairness of the process.

Based on the foregoing, it is recommended that the defendant's motion for summary judgment as to Moses be denied, at least at this early stage, with respect to his due process claims and that Moses be allowed to develop any arguments, including any additional supporting facts, that he may have to the defendants' defense of failure to exhaust.


IV.    **CONCLUSION**

In summary, while it appears likely that plaintiffs have properly exhausted any prison remedies that may be available with respect to their claims arising out of prison officials' conduct after the state court's habeas decision, there may be facts issues that preclude summary judgment at this time.  With respect to plaintiffs' claims for denial of due process during the disciplinary process, it is clear that Tweed properly exhausted available remedies, but there may be fact questions and need for further record development with respect to whether Moses's failure to exhaust his disciplinary remedies may be excused.

For these reasons, the undersigned **RECOMMENDS** that the Defendants' Motion for Summary Judgment (Docket No. 28) be **DENIED**.  Also, it is **FURTHER RECOMMENDED** that partial summary judgment be **GRANTED** in favor of Tweed dismissing defendants' affirmative

defense of failure to exhaust remedies as required by the PLRA, but only, at this point, with respect to Tweed's claims of denial of due process during the disciplinary proceedings.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to Local Rule 72.1(3)(4), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken.

Dated this 4th day of June, 2007.


/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge