**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Reginald Tweed and Jonathan Moses, | ) | |
| | ) | |
| Plaintiffs, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Timothy Schuetzle, et. al., | ) | Case No. 1:06-cv-032 |
| | ) | |
| Defendants. | ) | |

Before the Court is plaintiffs' motion for Rule 60(b) relief. Chief Judge Hovland has referred the motion to the undersigned for preliminary consideration. For the reasons set forth below, the undersigned recommends that the motion be denied.

**I.     BACKGROUND**

Plaintiffs are inmates at the North Dakota State Penitentiary. On April 19, 2006, they filed this lawsuit pursuant to 42 U.S.C. § 1983. They alleged violations of their civil rights arising out of disciplinary actions taken against them by prison officials after they were found by the prison disciplinary committee (Adjustment Committee) to have assisted in an escape attempt. Both plaintiffs were stripped of their good-time credits and placed in administrative segregation for a period of time. Other sanctions regarding housing and employment were imposed as well.

Eventually plaintiffs petitioned the Burleigh County district court for habeas corpus relief. On March 30, 2005, the state district court granted plaintiffs' habeas petitions and ordered Warden Schuetzle to reinstate their good-time credits. The district court concluded that the administrative

1

convictions for escape had been obtained in violation of the plaintiffs' due process rights. Prison officials never appealed the district court's determination, nor did redo the administrative process.

Disagreements arose between plaintiffs and prison officials regarding the application of the state district court's ruling. Plaintiffs complained that the escape convictions were still being used against them despite the conclusion of the state district court that the convictions had been obtained in violation of their constitutional rights. Specifically, plaintiffs wanted reinstatement of lost privileges, expungement of any reference to the disciplinary proceedings from their respective records, and compensation for lost wages and legal fees. When they could not get the relief they sought from prison officials, they filed this § 1983 action.

A settlement conference was held at the North Dakota State Penitentiary on August 15, 2007. Plaintiffs were represented by counsel during the settlement negotiations. A tentative settlement was reached subject to the parties being able to agree upon the language for the settlement agreement.

Following the settlement conference, the parties worked out a Settlement Agreement, which was signed by the parties and counsel on various dates in September 2007. As required by the Settlement Agreement, a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii) was filed on October 3, 2007, following which the court entered its order of dismissal and judgment on October 4, 2007.

The current *pro se* motion pursuant to Fed. R. Civ. P. Rule 60(b)(3) was filed on October 7, 2008, after having been placed in the prison mail system on October 3, 2008. There is no dispute as to the timeliness of the motion.

**II.     DISCUSSION**

    **A.     Jurisdiction**

Plaintiffs seek by their Rule 60(b)(3) motion to set aside the order of dismissal and the settlement agreement. In the alternative, they seek enforcement of the agreement. Plaintiffs' motion raises jurisdictional issues that have not been addressed by the parties which need to be considered first.

In <u>Kokkonen v. Guardian Life Ins. Co.of Am.</u>, 511 U.S. 375, 376 (1994), the parties settled a number of state law claims relating to an agency agreement. A stipulation for dismissal was filed pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). The district court ordered the case dismissed with prejudice. The stipulation and order did not reserve to the district court jurisdiction to enforce the settlement agreement. Later, the insurance company moved to enforce the settlement agreement and the district court entered an enforcement order. <u>Id.</u> at 377. The district court and the court of appeals relied upon the court's "inherent supervisory power" as a jurisdictional basis for the enforcement order, but the Supreme Court reversed, concluding that neither Rule 41 "nor any other provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation." <u>Id.</u> at 378. The Supreme Court noted, however, that the district court would have had ancillary jurisdiction to enforce the breach if the terms of the settlement agreement had been made a part of the order of dismissal or the order of dismissal had contained a "retaining jurisdiction" provision. <u>Id.</u> at 381.

In summary, "<u>Kokkonen</u> made clear that federal courts do not retain authority to enforce settlement agreements *unless* the dismissal order states that the district court is retaining jurisdiction over the agreement *or* the court incorporates the terms of the agreement into an order." <u>Jenkins v.</u>

Kan. City Mo. Sch. Dist., 516 F.3d 1074, 1081 (8th Cir. 2008) (finding jurisdiction was retained because dismissal was not due to an unincorporated settlement agreement). In this case, the order for dismissal case did not incorporate the settlement agreement nor did it contain a clause retaining jurisdiction.

However, this case is different from Kokkonen in that plaintiffs primarily seek an order reopening the case and only in the alternative request enforcement of the judgment. In Kokkonen, the Supreme Court noted the distinction between these two requests for relief, stating the following:

> It must be emphasized that what respondent seeks in this case is enforcement of the settlement agreement, and not merely reopening of the dismissed suit by reason of breach of the agreement that was the basis for dismissal. Some Courts of Appeals have held that the latter can be obtained under Federal Rule of Civil Procedure 60(b)(6).FN2 See, e.g., Keeling v. Sheet Metal Workers Int'l Assn., 937 F.2d 408, 410 (CA9 1991); Fairfax Countywide Citizens Assn. v. Fairfax County, 571 F.2d 1299, 1302-1303 (CA4 1978). But see Sawka v. Healtheast, Inc., 989 F.2d 138, 140-141 (CA3 1993) (breach of settlement agreement insufficient reason to set dismissal aside on Rule 60(b)(6) grounds); Harman v. Pauley, 678 F.2d 479, 480-481 (CA4 1982) ( Rule 60(b)(6) does not require vacating dismissal order whenever a settlement agreement has been breached). Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.

511 U.S. at 378.

As noted by the foregoing passage, some courts of appeal have held that subdivision (6) of Fed. R. Civ. P. 60(b) provides authority to reopen a case and set aside a settlement agreement in certain situations where there has been a breach of settlement agreement. Subdivision (3) of Rule 60(b), which is the one relied upon by the plaintiffs in this case, has also been used to provide jurisdiction when it is argued that the settlement agreement should be set aside because of fraud. See Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448, 454 (6th Cir. 2008).

While the matter is not completely free of doubt, it appears this court has authority under Rule 60(b)(3) to set aside the settlement agreement as well as the judgment of dismissal if plaintiffs have proved fraud. See id. But, the court lacks jurisdiction to consider plaintiffs' alternative request for enforcement of the agreement in light of the Supreme Court's decision in Kokkonen. See Williams v. Pennslyvania Board of Probation and Parole, 160 Fed.Appx., 2005 WL 3484176, *2-3 (3d Cir. 2005) (unpublished opinion).

Also, aside from the question of jurisdiction, Rule 60(b) does not itself provide a basis for granting affirmative relief in this case. E.g., Delay v. Gordon, 475 F.3d 1039, 10044-45 (9th Cir. 2007) (concluding that a court may only set aside a prior judgment under Rule 60(b) and may not grant affirmative relief that was not contained in the original judgment); Adduono v. World Hockey Assoc., 824 F.2d 617, 620 (8th Cir. 1987) (same). Consequently, the court's consideration of plaintiffs' Rule 60(b)(3) motion should be limited to plaintiffs' request to reopen the case by setting aside the settlement agreement and judgment of dismissal.

### B.    Merits of plaintiffs' Rule 60(b)(3) motion

Plaintiffs claim that during the settlement negotiations defendants misrepresented their ability to make corrections to plaintiffs' "Crystal Reports" about matters material to the settlement. A Crystal Report summarizes the results of all disciplinary charges that are brought against a prisoner. In particular, it sets forth a description of each charge, the determination that was made, the sanctions imposed if there was an adverse determination, and a description of the facts underlying the charge. More particularly, plaintiffs' argument of fraudulent inducement appears to be the following:

5

1. Plaintiffs claim they would not have entered into the Settlement Agreement if the result was that their alleged involvement in the attempted escape by another prisoner could be used against them for purposes of future security classifications and housing and work assignments.

2. According to plaintiffs, their pre-settlement agreement Crystal Reports contained affirmative language stating that the June 15, 2004, Adjustment Committee decision (which concluded plaintiffs had participated in the attempted escape) would <u>not</u> be used against them for purposes of security classifications and housing and work assignments and that prisons officials represented during the settlement discussions that they could not alter the existing language of the Crystal Reports and could only add language to them.

3. Plaintiffs claim they reasonably relied upon the representation that the language of the Crystal Reports could not be changed (including the language that the Adjustment Committee's decision would not be used) in concluding that their alleged involvement in the escape would not be used against them with respect to future security classifications and housing and work assignments.

4. Defendants subsequently used their alleged involvement in the escape for purposes of classification and future housing and work assignments, contrary to what plaintiffs understood was the implicit representation by prison officials that this would not be done.

Fed. R. Civ. P. 60(b) is based in equity and exists only to prevent injustice, while at the same time preserving the finality of judgments. <u>Harley v. Zoesch</u>, 413 F.3d 866, 870 (8th Cir. 2005). To

prevail upon their Rule 60(b) motion, plaintiffs must show by clear and convincing evidence that the opposing party engaged in fraud or misrepresentation that prevented the moving party from fully and fairly presenting their case.  Harley, 413 F.3d at 870.

For purposes of the discussion that follows, it will be assumed that the pre-settlement language of the Crystal Reports did state that June 15, 2004, Adjustment Committee decision would not be used for purposes such as classifications and housing and work assignments, although this is not entirely clear from the evidence that has been submitted.  Further, it will also be assumed that the prison officials did represent that the language of the Crystal Reports could not be changed and could only be added to.[1]

---

[1] Four different versions of the Crystal Reports have been proffered to the court by the parties.  They are the following in date order beginning with the earliest:
- The earliest version presented to the court is dated 9/17/2007.  This version contains language stating that the state court had ordered the restoration of the good-time credits.  It also states that the defendants would not use the June 15, 2004, Adjustment Committee decision for purposes such as security classification, housing, and work assignments.  This is the version that plaintiffs rely upon for their claim of fraud, but the date of this version is several days after the plaintiffs signed the Settlement Agreement and more than a month after the settlement conference.  Whether this was the version in place at the time of the settlement conference and later when plaintiffs signed the settlement agreement is not entirely clear, particularly given its context.  On the other hand, the defendants in their response to plaintiffs motion do not specifically deny plaintiffs' allegation that this was the version in place pre-settlement.
- The next version, which is dated 10/23/2007, revises the language describing the impact of the state-court's decision to conform with the language mandated by paragraph C(2) of the Settlement Agreement (set forth later above) but leaves in place the "will not" language with respect to use of the Adjustment Committee's decision for purposes of classification, housing, and work assignments.
- A third version, which is dated 8/7/2008, retains the language mandated by paragraph C(2) of the Settlement Agreement but changes the "will not" language with respect to use of the Adjustment Committee's decision with respect to future discretionary decisions in terms of classification, housing, and work assignments to the affirmative "may use."  What is not clear from the evidence is when this change was made relative to certain post-settlement actions being taken against plaintiffs with respect to classification, housing, and/or work assignments.
- Finally, the latest version is dated 10/23/2008, which is after the plaintiffs brought their Rule 60(b) motion. In this version, the reference to use of the Adjustment Committee's decision with respect to classification, housing, and work assignments has been deleted leaving in place only the language mandated by paragraph C(3) of the Settlement Agreement.  Defendants claim this change was made simply to eliminate extraneous language, but, arguably, this version is the most consistent with the spirit of the Settlement Agreement, if not also its specific language, since there is nothing in the Settlement Agreement about including language in the Crystal Reports that the procedurally defective Adjustment Committee decision may be used for such purposes.  And, as the defendants note in their

But, even with these assumptions, plaintiffs have not demonstrated fraud. This is because the state district court concluded only that the Adjustment Committee's decision of June 15, 2004, was defective because plaintiffs' procedural due process rights had been violated and not that the plaintiffs were innocent of any involvement in the alleged escape. Consequently, there is a substantive difference between representing that the Adjustment Committee's June 15, 2004, decision would not be used in making future security classifications and housing and work assignments, and stating that the underlying facts regarding plaintiffs' involvement would never be used for such purposes. And, with respect to the latter, plaintiffs have not demonstrated by clear and convincing evidence that it was ever represented to them that the underlying facts with respect to their alleged involvement in the escape (as opposed to the Adjustment Committee's decision) would not be used in the future.

Clearly, the Settlement Agreement contains no such promise. In relevant part, Section C of the Settlement Agreement reads as follows:

> 2.     The DOCR will add the following language to the Plaintiff's Crystal Reports of the Inmate Disciplinary Record:
>
>> The disciplinary conviction for escape on June 15, 2004, was invalidated as a result of the decision of the Burleigh County District Court on March 30, 2005. The disciplinary conviction for escape and any factual recitation in this report describing the initial charge should not be used for parole and pardon considerations.

---

brief and as will discussed above in a moment, there may be a substantive difference between use of the procedurally defective Adjustment Committee's decision and considering anew the facts underlying plaintiffs' alleged involvement in the escape with respect to future decision-making.

Defendants have not given a clear explanation for why the various changes were made. Also, troubling in light of plaintiffs' contention that prisons officials represented they could only add language to the Crystal Reports and not change the existing language is the demonstrated ability of the defendants to change the reports when it suits their convenience. But, as discussed above, plaintiffs' claim of fraud fails for other reasons and these matters are not material to the conclusion that the plaintiffs' motion should be denied.

>      3.      The DOCR will review the Plaintiffs' records from March 30, 2005, to the present, including ongoing records, and on records which reference the June 15, 2004 escape conviction, add a notation the conviction was invalidated by a March 30, 2005, court order.
>
>      4.      The DOCR will instruct staff not to reference the June 15, 2004, escape convictions in future records unless a notation the conviction was invalidated by a March 20, 2005, court order is included.
>
> * * * *
>
>      6.      The Plaintiffs acknowledge and agree that this agreement does not in any way restrict the discretionary power and authority of DOCR officials and staff to make decisions regarding housing, work assignments, or other discretionary matters.

If anything, the language of the Settlement Agreement affirmatively supports defendants' position - at least to the extent that defendants did not agree to not use the underlying facts relating to plaintiffs' alleged involvement in the escape in making future discretionary decisions.[2]

While the failure to prove any material misrepresentation by clear and convincing evidence is sufficient to deny plaintiffs' motion, plaintiffs have also failed to prove by clear and convincing evidence that they reasonably relied upon the alleged language of the pre-settlement Crystal Report,

---

[2] In addition to arguing they did not agree to not use the underlying facts in making future discretionary decisions, defendants argue that plaintiffs affirmatively agreed the underlying facts could be used for such purposes, including the adverse decisions that have already been made post-settlement. This, however, may be an overly broad reading of the Settlement Agreement since paragraph C(6) does not state that and, as defendants have properly argued albeit in a different context, the language of the Settlement Agreement is controlling. In other words, stating that nothing in the agreement specifically limits the defendants' discretionary authority over classification and housing and work assignments, whatever the scope of that lawful authority might be, is not necessarily the same thing as plaintiffs affirmatively agreeing that the underlying facts of the escape could be used for such purposes, particularly if it would otherwise constitute an impermissible exercise of that authority or if the defendants failed to follow the correct procedures (if there are any) in considering anew the underlying facts.

Whether plaintiffs' rights have been violated by any post-settlement use of the underlying facts related to the escape, or for that matter the Adjustment Committee's decision given the suggestion by one of the versions of the Crystal Reports that the decision could still be used for future discretionary decision-making, are matters that are not now before the court, since the only issue properly raised by plaintiffs' Rule 60(b)(3) motion is whether the Settlement Agreement should be set aside and the case reopened because of fraud . Also, whether such matters could be litigated here, as opposed to only in state court, is certainly an issue given the Supreme Court's decision in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), which imposes limits on this court's jurisdiction over prison administrative and disciplinary matters, and the court's lack of jurisdiction over matters that only involve violations of state law.

stating that the Adjustment Committee's decision would not be used in the future, as an implicit representation that the underlying facts would also not be used. At the very least, the absence of any affirmative promise in the Settlement Agreement that the underlying facts would not be used, coupled with the totality of the Settlement Agreement's language suggesting to the contrary, should have been the basis for further questions and discussion prior to execution of the agreement. And, here, plaintiffs were represented by counsel.

In summary, plaintiffs have failed to demonstrate by clear and convincing evidence that they are entitled to relief under Rule 60(b)(3).[3]

### III.   CONCLUSION

Having concluded the plaintiffs are not entitled to relief under Rule 60(b)(3), it is hereby **RECOMMENDED** that plaintiffs' motion (Doc. No. 71) be **DENIED**.

---

[3] Further, to the extent that Rule 60(b)(6) might also provide a basis for reopening the case, plaintiffs have failed to demonstrate the exceptional circumstances that would justify relief under that subdivision. See, e.g., Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d at 458-459; Ford Motor Company v. Mustangs Unlimited, Inc., 487 F.3d 465 (6th Cir. 2007); Keeling v. Sheet Metal Workers Int'l Assn., 937 F.2d 408, 410 (9th Cir. 1991). In particular, this is not a case where an alleged breach of the Settlement Agreement has deprived plaintiffs of all benefits of the agreement or where there are no other remedies for the breach. Here, defendants agreed in paragraph C(2) to include a statement in the Crystal Reports that plaintiffs' administrative convictions for escape and the underlying facts should not be used for purposes of parole and pardon decisions and further agreed in paragraphs C(3)&(4) to include notations that the administrative convictions for escape had been invalidated with respect to any mention of the convictions. And, it is undisputed that prison officials have included in the Crystal Reports the language mandated by paragraph C(2), so there has been some compliance with the Settlement Agreement by prison officials. Finally, if the Settlement Agreement has been breached, which is not at all clear, plaintiffs can seek enforcement of the Agreement in state court.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to D.N.D. Civ. L. R. 72.1(D)(3), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken.

Dated this 6th day of January, 2009.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge