**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Reginald E. Tweed and Jonathan Moses, | ) | |
| | ) | **ORDER DENYING PLAINTIFFS'** |
| Plaintiffs, | ) | **MOTION FOR INJUNCTIVE RELIEF** |
| | ) | **AND GRANTING PLAINTIFFS'** |
| vs. | ) | **MOTION FOR EXTENSION OF TIME** |
| | ) | |
| Timothy Schuetzle, et al., | ) | |
| | ) | Case No. 1:06-cv-032 |
| Defendants. | ) | |

Before the Court is the Plaintiffs' "Motion for Enlargement of Time for Answering Report and Recommendation and for Injunction Allowing Communication Between Plaintiffs" filed on February 24, 2009. See Docket No. 84. The Defendants filed a response to the Plaintiffs' motions on February 27, 2009. See Docket No. 87. The Plaintiffs filed a reply brief on March 10, 2009. See Docket No. 89. For the reasons set forth below, the Plaintiffs' motion for injunctive relief is denied and the motion for an extension of time is granted.

**I.      EXTENSION OF TIME**

On April 19, 2006, the plaintiffs, Reginald Tweed and Jonathan Moses, filed this pro se civil rights action under 42 U.S.C. § 1983. See Docket No. 1. On July 20, 2007, attorney Chad R. McCabe entered his appearance as counsel of record for the Plaintiffs. See Docket No. 52. On October 3, 2007, the parties filed a Stipulation of Dismissal which stated that the parties mutually stipulated and agreed that any and all of the Plaintiffs' claims were "dismissed with prejudice and without costs, disbursements, or attorneys' fees to any party except Defendants will pay $500.00 of Plaintiffs' attorney's fees." See Docket No. 66. On October 4, 2007, the Court adopted the parties'

1

Stipulation of Dismissal, and ordered that the case be dismissed with prejudice and without costs or disbursements to either party, except the Court ordered the Defendants to pay $500.00 of the Plaintiffs' attorneys' fees. See Docket No. 67. On October 4, 2007, judgment was entered adopting the Stipulation of Dismissal. See Docket No. 68.

On October 7, 2008, the Plaintiffs filed a pro se motion to vacate the Court's October 4, 2007, order pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure. See Docket No. 71. Magistrate Judge Charles S. Miller, Jr. conducted a review of the record and relevant case law and submitted a Report and Recommendation on January 6, 2009. See Docket No. 81. Judge Miller recommended that the motion be denied because the Plaintiffs have failed to demonstrate by clear and convincing evidence that they are entitled to relief under Rule 60(b)(3). The Plaintiffs were given ten (10) days to object, but failed to file an objection. On January 28, 2009, the Court adopted the Report and Recommendation, and denied the Plaintiffs' Rule 60(b)(3) motion. See Docket No. 82.

The Court has since been made aware that the Report and Recommendation was not served on the pro se Plaintiffs, but rather was served on attorney Chad McCabe. The Plaintiffs did not receive a copy of the Report and Recommendation. On February 19, 2009, McCabe filed a motion to withdraw as counsel of record for the Plaintiffs to ensure that the Plaintiffs would receive court filings in this case. See Docket No. 83. On February 26, 2009, the Court granted McCabe's motion to withdraw. See Docket No. 86. Because the Plaintiffs did not receive the Report and Recommendation, the Plaintiffs were not able to timely object. The Court **ORDERS** that its Order Adopting Report and Recommendation (Docket No. 82) is **VACATED** so that the Plaintiffs have an adequate opportunity to object to the Report and Recommendation.

On March 2, 2009, the Plaintiffs' reply to the Rule 60(b)(3) motion was filed. See Docket No. 88. The Court has been made aware that the reply brief was untimely filed as a result of clerical error, and through no fault of the Plaintiffs. The Report and Recommendation dated January 6, 2009, does not take into consideration the Plaintiffs' reply brief. Therefore, the Court will fully consider the arguments raised in the reply brief, as well as any objections to the Report and Recommendation, before issuing another ruling on the Report and Recommendation. The Plaintiffs request a 30-60 day extension of time to file objections to the Report and Recommendation. See Docket No. 84. On March 16, 2009, Moses individually filed an objection to the Report and Recommendation. See Docket No. 90. The Court **GRANTS** the Plaintiffs' motion for extension of time (Docket No. 84) to file objections to the Report and Recommendation. The Plaintiffs shall have until Friday, May 22, 2009, to file objections to the Report and Recommendation and any additional supplements to Moses's objection.

## II.    INJUNCTIVE RELIEF

The Plaintiffs also move for a preliminary injunction and a temporary restraining order to enjoin the Defendants from denying the Plaintiffs the right to communicate with each other via United States mail regarding this case. The Plaintiffs are housed in different correctional facilities within the North Dakota Department of Corrections and Rehabilitation (DOCR). Tweed is presently housed at the North Dakota State Penitentiary (NDSP) in Bismarck, North Dakota. Moses was originally housed at the NDSP, but was transferred to the James River Correctional Center (JRCC) in Jamestown, North Dakota, on December 16, 2008. Moses continues to be housed at the JRCC.

The Defendants have enacted a policy prohibiting inmates from different facilities from communicating via mail:

> The DOCR has a policy that generally prohibits inmate-to-inmate correspondence between inmates in separate DOCR facilities. Contraband is not limited to items such as drugs, weapons, or obscene materials, but includes any item that inmates are not allowed to possess under the DOCR's rules, including written communications between inmates. The prohibition on inmate-to-inmate correspondence between prison facilities helps the DOCR to limit the introduction of contraband into its facilities.

See Docket No. 87-3. Pursuant to the policy, the Plaintiffs are prohibited from sending written communications to each other to discuss the merits of this case. As a result, if the Plaintiffs wish to object to the Report and Recommendation, they will likely need to file separate objections. The Plaintiffs contend that they "will suffer immediate and irreparable damage to their claim should they have to file separate pleadings. Also this Court will have confusing and maybe conflicting filings to wade through." See Docket No. 84. As noted, Moses has already filed an objection to the Report and Recommendation. See Docket No. 90.

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of temporary restraining orders and preliminary injunctions. It is well-established that applications for preliminary injunctions and temporary restraining orders are generally measured against the same factors, which are set forth in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109 (8th Cir. 1981) (*en banc*). Wachovia Securities, L.L.C. v. Stanton, 571 F. Supp. 2d 1014, 1031 (N.D. Iowa 2008). Whether a preliminary injunction or temporary restraining order should be granted involves consideration of

"(1) the movant's probability or likelihood of success on the merits, (2) the threat of irreparable harm or injury to the movant absent the injunction, (3) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (4) the public interest." Id. at 1032 (citing Dataphase Sys., Inc., 640 F.2d at 114). "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of

equities weighs toward granting the injunction." United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citing Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993); Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500, 503 (8th Cir. 1987)). The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. Crawford Capital Corp. v. Bear Soldier Dist., 374 F. Supp. 2d 821, 824 (D.N.D. 2005).

First, the Plaintiffs must establish a likelihood of success on the merits. Only Moses has stated his reasons for opposing the Report and Recommendation. The Plaintiffs' likelihood of success will be determined once the they have formally filed objections to the Report and Recommendation and any supplements to Moses's objection. Therefore, at this early stage of the proceedings, the Court is without sufficient information to determine the Plaintiffs' likelihood of success on the Rule 60(b)(3) claim.

Second, the Plaintiffs must establish the threat of immediate and irreparable injury if the injunction is not granted. The Plaintiffs contend they will suffer immediate and irreparable injury if they are prohibited from communicating via United States mail for purposes of this case. Essentially, the Plaintiffs are arguing that the Defendants' policy which prohibits them from communicating with each other is tantamount to being denied meaningful access to the courts.

The United States Constitution guarantees inmates meaningful access to the courts. White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977), *overruled on other grounds by* Lewis v. Casey, 518 U.S. 343, 354 (1996)). "Meaningful access to the courts is the capability to

bring 'actions seeking new trials, release from confinement, or vindication of fundamental civil rights.'" White, 494 F.3d at 680 (quoting Bounds, 430 U.S. at 827). To assert a successful claim for denial of meaningful access to the courts, the inmates must demonstrate that they suffered prejudice. Berdella v. Dello, 972 F.2d 204, 210 (8th Cir. 1992); see Flittie v. Solem, 827 F.2d 276, 280 (8th Cir. 1987) (finding that a regulation prohibiting regular users of the prison law library from accessing the library until non-regular users were finished did not deny the defendant meaningful access to the courts because the defendant failed to establish any prejudice resulting from the regulation); Grady v. Wilken, 735 F.2d 303, 305-06 (8th Cir. 1984) (finding that a regulation requiring the withholding of inmate mail for inmates transferring to different correctional facilities did not deny the defendant meaningful access to the courts because the defendant could not establish that the regulation prejudiced his lawsuit).

The Plaintiffs have failed to establish that they have been denied meaningful access to the courts. Both Plaintiffs are fully aware that the relief which they seek – vacating the Court's October 4, 2007, order – is premised on Rule 60(b)(3) of the Federal Rules of Civil Procedure. The Report and Recommendation fully sets forth the facts and case law that Judge Miller relied on when making his recommendation to deny the Plaintiffs' motion to vacate. More important, both Plaintiffs have access to law libraries with Lexis-Nexis CD Rom electronic legal research. The Lexis-Nexis CD Rom contains a variety of legal resources, including: cases from the United States Supreme Court, Courts of Appeal, United States District Court, and North Dakota Supreme Court; federal statutes; and North Dakota statutes. In addition, both Plaintiffs have access to inmate law clerks, who are available to assist inmates with legal research. Each Plaintiff may individually object to the Report and Recommendation and provide his own facts and case law in support, and the Court will carefully consider the merits of each objection filed before ruling on the Report and Recommendation.

Therefore, the Court finds that the regulation prohibiting inmate-to-inmate correspondence does not prejudice the Plaintiffs' lawsuit nor create a threat of irreparable harm. The filing of separate objections would not unduly burden the Clerk of Court nor unnecessarily delay the handling of this case.

Third, the Plaintiffs must demonstrate that the granting of injunctive relief would serve the public interest. "The public's interest in safe and orderly prisons is significant." Goff v. Nix, 803 F.2d 358, 365 (8th Cir. 1986). The Warden of the NDSP, Timothy Schuetzle, has provided a number of reasons for the policy prohibiting communications between inmates of different correctional facilities, including: inmate gang members attempt to communicate and coordinate illegal activities between DOCR prison facilities; inmates attempt to coordinate disturbances at one or more DOCR prison facilities; the DOCR needs the ability to separate particular inmates who pose safety risks to others; inmates recruit others to retaliate against DOCR staff; inmates invent rumors about prison staff or inmates and attempt to spread the rumors to other DOCR prison facilities to create disturbances; the DOCR is without sufficient resources to screen all communications that would be passed between inmates of different DOCR prison facilities; and inmate mail that is marked as "legal mail" may be opened in the presence of the inmate but not read by prison staff, therefore, the "legal mail" could potentially be used as a means of transferring contraband between DOCR prison facilities. See Docket No. 87-3. The Court finds that, in light of the security concerns associated with inmate-to-inmate correspondence between inmates of different facilities, the public interest is furthered by the policy. The public certainly has a strong interest in prison security, and the issuance of an injunction would put prison staff and inmates, as well as the public at risk.

Fourth, the balance of harms factor significantly favors the Defendants. The public, prison staff, and other inmates could potentially face security risks if injunctive relief were granted. The

7

Plaintiffs argue that any security concerns which would arise as a result of their correspondence can be alleviated:

> If the Defendants are afraid that the Plaintiffs are going to communicate secret information back and forth between the North Dakota State Penitentiary (NDSP) and James River Correctional Center (JRCC) then they certainly have the security means to check any correspondence for such information, after all they receive the mail before delivering it, and already check mail coming from the courts and attorney mail for contraband. The mail between the Plaintiffs could be treated the same way, they understand that this communication is for legal purposes only.
>
> If the Defendants are so concerned with security in this matter then they could certainly bring Plaintiff Jonathan Moses back to NDSP temporarily until the completion of this Rule 60 Motion.

See Docket No. 89.

The Plaintiffs' recommendations do not cure the security risks created with inmate-to-inmate correspondence. The Plaintiffs wish to communicate with each other via mail for purposes of this case. If allowed, the mail would be stamped "legal mail." "Legal mail" is accorded greater protections than other mail because of its protected status. Unlike other mail which is screened by prison staff prior to being distributed to the inmate, "legal mail" is opened in the presence of the inmate but is not read by prison staff. Because the Defendants are unable to read "legal mail," prison staff are unable to determine whether the correspondence between the inmates is legally related, or whether the correspondence is being used to incite violence, spread rumors, or pass contraband. Therefore, regardless of whether the Defendants may check the envelopes to ensure that contraband is not being passed back and forth in the envelopes, the Defendants would be unable to ensure that the actual contents of the Plaintiffs' letters are legally related. Further, the granting of injunctive relief in this case could potentially have a ripple effect on fellow inmates who wish to communicate for purposes of a court case. Even if the Plaintiffs were to correspond with each other

solely for legal purposes, there is no way of knowing whether other inmates similarly situated would abuse the privilege to communicate.

The United States Supreme Court has found that written communications between inmates of different facilities may pose security concerns. See Turner v. Safely, 482 U.S. 78, 91-93 (1987). In Turner, the Supreme Court held that a ban on correspondence between inmates of different institutions was constitutional because it was reasonably related to preserving internal security. Id. at 92 ("[T]he correspondence regulation does not deprive prisoners of all means of expression. Rather, it bars communication only with a limited class of other people with whom prison officials have particular cause to be concerned – inmates at other institutions."). The holding in Turner was not limited to non-legal correspondence. See Shaw v. Murphy, 532 U.S. 223, 228 (2001) ("In Turner, we held that restrictions on inmate-to-inmate communications pass constitutional muster only if the restrictions are reasonably related to legitimate and neutral government objectives. We did not limit our holding to nonlegal correspondence . . . .") (citations omitted). Therefore, legal correspondence between inmates is not accorded greater constitutional protection than non-legal correspondence. Following Turner, the Eighth Circuit Court of Appeals has upheld a ban on legal correspondence between inmates of different correctional facilities in light of the resulting security concerns. See Goff v. Nix, 113 F.3d 887, 891 (8th Cir. 1997).

The Court finds that the correspondence rights asserted by the Plaintiffs, if granted, would be exercised at the cost of less security and safety for prison staff and inmates alike. Accordingly, the Court finds that the harm to the Defendants in granting injunctive relief substantially outweighs any benefit that the Plaintiffs may receive in being able to communicate with each other for purposes of this lawsuit.

### III.     CONCLUSION

Having carefully considered the Plaintiffs' motion for injunctive relief, the Court finds that the Dataphase factors, when viewed in their totality, do not weigh in favor of the issuance of a preliminary injunction or a temporary restraining order at this stage of the proceedings. The Plaintiffs' motion for injunctive relief (Docket No. 84) is **DENIED**.

The Plaintiffs' motion for an extension of time to object to the Report and Recommendation (Docket No. 84) is **GRANTED**. The Plaintiffs shall have until Friday, May 22, 2009, to object to the Report and Recommendation.

**IT IS SO ORDERED.**

Dated this 23rd day of March, 2009.

/s/  Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court